```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 29, 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
DUNCAN GALVANIZING :
CORPORATION, individually and on behalf :
of all those similarly situated, :
:
                Plaintiff, :
    -v- :   14-cv-3728 (KBF)
:   and related actions
THE LONDON METAL EXCHANGE :
LIMITED, et al., :   <u>ORDER</u>
:
                Defendants. :
:
------------------------------------------------------------X
KATHERINE B. FORREST, District Judge:

        On October 30, 2015 (tomorrow), from 9:00 a.m. to 12:00 p.m., the Court shall hear oral argument on the pending motions to dismiss. The parties shall confer and determine who, as between the various movants, shall address the Court and on which topics.

        The parties should be prepared to address all aspects of the pending motions. However, the Court is particularly interested in the parties' responses to the following:

        1.  The Court requires that allegations in the complaint address the specific activities/conduct of a specific defendant; any defendant as to whom there are insufficient specific allegations should be dismissed. In this regard, it does appear that, for instance, the grouping of all of the Goldman entities creates what may be called (in formal legal terminology) a "mish-mash". The Court cannot tell which Goldman

entity – if any – is the trading entity alleged to have been a participant in the unlawful agreement. (There do not appear to be specific allegations of unlawful conduct as to GSI, GS Power Holdings, MCEPF Metro, or Mitsi Holdings LLC.)

2. The Goldman defendants argue that plaintiffs have failed adequately to allege injury in fact – but this position appears to be based on a different theory of the case from that proposed by plaintiffs. Plaintiffs allege that the schedule of warrant cancellations led directly to supply constraints, which, in turn, led to increases in the Premium, and that they were required to pay such increased price. As the Court must accept this allegation as true on this motion, isn't it enough to allege injury in fact?

    a. GS appears instead to be focused on whether plaintiffs owned zinc stored in Pacorini New Orleans warehouses and can allege a particular injury based on storage fees or services – not on the plaintiffs' theory which is the interplay between stored zinc, supply and price.

3. The market allocation allegations appear to be an afterthought – the counts do not address them at all. Count 1 specifically references the alleged shared conscious commitment as relating to price manipulation of zinc, not to allocate markets; and Count 2 specifically references the unlawful conduct at issue there – none of which is market allocation.

   a. A theory of market allocation would, in any event, be in tension with plaintiffs' theory here of coordinated conduct in New Orleans as to zinc (versus allocation to Pacorini of zinc, and aluminum to Metro in Detroit).

   b. How do plaintiffs suggest the Court should understand the market allocation allegations?

4. The complaint appears to reduce to the following:

   a. Affiliates of the Trading Defendants all acquired metals warehouses in 2010;

   b. Thereafter stocks of zinc increased, load-out queues increased, and the Premium increased;

   c. In the **fall of 2012** (¶ 189), Pacorini and the Trading Defendants entered into an agreement as to a schedule of warrant cancellations at the Pacorini warehouses; there is no allegation that there was a meeting or agreement as to warrant cancellation and queue schedule/order relating to zinc maintained at any Metro or Henry Bath warehouses.

   d. The scheduling agreement referred to in ¶ 189 was carried out, in part, by the use of allegedly false bills of lading prepared by Pacorini employees for the purpose of misleading the LME as to what was really happening at the Pacorini New Orleans

      warehouses; there is no allegation that any other defendant was aware of or involved in the falsification;

   e. Pacorini and Metro are alleged to have provided financial incentives for storage – there is no allegation that Henry Bath was involved in such conduct;

   f. Pacorini is alleged to have engaged in movement of zinc to "shadow warehouses" – but there are no allegations as to shadow warehousing as to any other defendant;

   g. There are various governmental and regulatory investigations ongoing with respect to commodity trading and warehousing operations of the defendants relating to several different metals, including zinc.

5. This recitation of the Court's take away from the case leads the Court to the following:

   a. This seems to be a case almost exclusively about Pacorini and Glencore.

   b. It seems to really amount to a hub and spoke-type conspiracy with Pacorini and Glencore together at the hub, and the other Trading Defendants as the spokes. The Trading Defendants (including Glencore) are incented to allow slower load-outs in order to maintain the contango or other advantageous trading positions.

    c. But this theory does not require the inclusion of Metro or Henry Bath.

    d. Henry Bath really seems to be absent from any allegations of substance throughout the complaint.

    e. And, along those lines, what is JP Morgan doing in the case? While it has a trading arm, there is no indication that it did anything more than attend the 2012 scheduling agreement – is this all there is in terms of agreement for JP Morgan?

    f. What is the evidence of unlawful agreement as between any defendants at any point prior to September 2012? I understand there are queues developing and premiums increasing in 2010, but what factual allegations support that that was the result of an agreement?

6. How do the charts on page 54 of the complaint – ¶¶ 171-172 – help plaintiffs? One would think that they should show the opposite of what they show – namely, declining revenue and adjusted EBIT from Glencore's zinc assets.

7. Shouldn't all defendants except for Glencore, Pacorini, and specific Trading Defendants, be dismissed, and shouldn't the relevant time period for any § 1 claim be only as of September 2012?

8. The class allegations present some interesting issues. The class asserts injury from May 2010 to the present:

    a. Isn't the theory that there is ongoing injury "to the present" inconsistent with the joinder of the Metro and Henry Bath entities – as they were sold in 2014; thus, if they were sold and the harm is continuing, doesn't that undercut their involvement in the conduct at issue in the first instance?

    b. The class allegations allege harm going back to May 2010 – how is this supportable in light of (1) acquisitions of Warehouse Defendants after that date (including Pacorini), and (2) the agreement among Pacorini and the Trading Defendants as of September 2012?

    c. The class allegations only refer to the conspiracy claim – the Court assumes no class is being sought as to the monopolization claim.

SO ORDERED.

Dated:    New York, New York
            October 29, 2015

                                          KATHERINE B. FORREST
                                          United States District Judge