**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                       :

IN RE ZINC ANTITRUST LITIGATION       :     Case No. 14 Civ. 3728 (KBF)
                                       :
This Document Relates To:             :     Hon. Katherine B. Forrest
                                       :
ALL CASES                         :
                                       :
                                       :
                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GLENCORE LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO**
**DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page #**

**INTRODUCTION**.................................................................................................1

**ARGUMENT**......................................................................................................3

I.  THE COURT SHOULD DISMISS THE SECTION 2 MONOPOLIZATION
CLAIM AGAINST GLENCORE LTD...................................................................3

    A.  The SAC Should Be Dismissed Because it Does Not Adequately Allege a
Relevant Market..........................................................................................4

        1.  The SAC Does Not Adequately Allege a Relevant Product Market ..........4

        2.  The SAC Does Not Adequately Allege a Relevant Geographic
Market...............................................................................................5

    B.  The SAC Should Be Dismissed Because it Does Not Allege Facts
Showing Glencore Ltd.'s Monopoly Power in the LME U.S. Zinc Market...........6

        1.  The SAC Does Not Plead Direct Evidence of Glencore Ltd.'s
Monopoly Power in the Market for LME U.S. Zinc..................................7

        2.  The SAC Does Not Plead Indirect Evidence of Glencore Ltd.'s
Monopoly Power in the LME U.S. Zinc Market .......................................8

    C.  The SAC Should Be Dismissed Because it Does Not Allege Facts
Showing that Glencore Ltd. Unlawfully Acquired or Maintained Its
Alleged Monopoly Through Anticompetitive Conduct.......................................11

II.  THE SAC DOES NOT ADEQUATELY PLEAD A SECTION 2 ATTEMPTED
MONOPOLIZATION CLAIM AGAINST GLENCORE LTD.......................................16

III.  THE SAC DOES NOT ADEQUATELY PLEAD AN ILLEGAL MERGER
UNDER SECTION 7 OF THE CLAYTON ACT ............................................18

**CONCLUSION** ..................................................................................................**20**

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page #</u>

## <u>Cases</u>

*Affinity LLC v. GfK Mediamark Research & Intelligence, LLC*,
   547 F. App'x 54 (2d Cir. 2013) ............................................................................ 17

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
   985 F. Supp. 2d 612 (S.D.N.Y. 2013) .......................................................... 10, 17

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962) ............................................................................................ 19

*Chapman v. N.Y. State Div. for Youth*,
   546 F.3d 230 (2d Cir. 2008) ................................................................................. 5

*City of New York v. Coastal Oil New York, Inc.*,
   No. 96-cv-8667 (RPP), 1998 WL 82927 (S.D.N.Y. Feb. 25, 1998) ..................... 17

*Conte v. Newsday, Inc.*,
   703 F. Supp. 2d 126 (E.D.N.Y. 2010) ................................................................ 16

*Heerwagen v. Clear Channel Commc'ns*,
   435 F.3d 219 (2d Cir. 2006) ................................................................................. 8

*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) .......... 5, 6, 14

*In re Zinc Antitrust Litig.*,
   No. 14-cv-3728 (KBF), 2016 WL 93864 (S.D.N.Y. Jan. 7, 2016) .................. passim

*Invamed, Inc. v. Barr Labs., Inc.*,
   22 F. Supp. 2d 210 (S.D.N.Y. 1998) ................................................................... 12

*Madison 92nd Street Assocs., LLC v. Courtyard Mgmt. Corp.*,
   624 F. App'x 23 (2d Cir. 2015) ............................................................................ 5

*Navarra v. Marlborough Gallery, Inc.*,
   820 F. Supp. 2d 477 (S.D.N.Y. 2011) ........................................................... 16, 17

*PepsiCo, Inc. v. Coca-Cola Co.*,
   315 F.3d 101 (2d Cir. 2002) .............................................................................. 4, 8

*Todd v. Exxon Corp.*,
   275 F. 3d 191 (2d Cir. 2001) ................................................................................ 4

*Tops Mkts., Inc. v. Quality Mkts. Inc.*,
   142 F.3d 90 (2d Cir. 1998) ................................................................................... 8

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) ............................................................................................ 12

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ............................................................................................ 12

**Statutes and Other Authorities**

*Active Listed Warehouses*, London Metal Exchange (Feb. 16, 2016),
https://www.lme.com/~/media/Files/Restricted%20Website%20Users/Warehouse%
20List/Trading/Warehousing%20and%20brands/Approved%20warehouses/LME%
20Listed%20Warehouses.pdf ............................................................................. 19

*Associate trade members – category 5*, London Metal Exchange,
https://www.lme.com/trading/membership/category-5-associate-trade/ (last visited
Feb. 29, 2016) ................................................................................................. 14

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1

IVA Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law (3d ed. 2009) .............................. 18

*Lead and Zinc Committee*, London Metal Exchange,
https://www.lme.com/about-us/corporate-structure/committees/lead-and-zinc-
committee/ (last visited Feb. 29, 2016)................................................................. 14

*Membership*, London Metal Exchange,
https://www.lme.com/en-gb/trading/membership/ (last visited Feb. 29, 2016) ...................... 14

October 30, 2015 Oral Arg. Tr............................................................................................ 1

*Prospectus*, Glencore International plc (May 3, 2011),
http://www.glencore.com/assets/investors/doc/transaction_archive/ipo/Final-
Prospectus-3-May-2011-lowres.pdf ....................................................................... 9

U.S. Dep't of the Interior, U.S. Geological Survey, *Mineral Commodity Summaries,
Zinc* (January 2016), http://minerals.usgs.gov/minerals/pubs/commodity/zinc/mcs-
2016-zinc.pdf ................................................................................................. 10

*Warehousing Committee*, London Metal Exchange,
https://www.lme.com/en-gb/about-us/corporate-structure/committees/warehousing-
committee/ (last visited Feb. 29, 2016)................................................................. 14

## INTRODUCTION

Defendant Glencore Ltd. respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' Second Amended Class Action Complaint (ECF No. 163) (the "SAC") for failure to state a claim.

In its January 7, 2016 Opinion & Order, the Court dismissed the Section 2 claims in Plaintiffs' Consolidated Amended Complaint (the "CAC") on the basis that the CAC did not adequately allege monopolization of the LME Zinc Warehouse Services market by Glencore Ltd. or Pacorini Metals USA, LLC ("Pacorini USA").  At oral argument, Plaintiffs purported that their monopolization claim included the market for physical zinc.  (October 30, 2015 Oral Arg. Tr. at 102:24-103:20.)  While the Court disagreed, it nevertheless granted Plaintiffs a final opportunity to try to plead a Section 2 claim with respect to an alleged monopoly in the physical zinc market, expressly cautioning that the CAC did "not plausibly allege monopoly power in the market for the sale of primary zinc," and that:

> the allegations in the CAC taken as a whole do not connect the dots to plausibly show that Glencore Ltd. and/or Pacorini have monopoly power in that market.  If plaintiffs seek to assert that Glencore's activity in the physical zinc market created a monopoly position or was dangerously close to doing so, they must make that allegation more directly than they have done thus far.

*In re Zinc Antitrust Litig.*, No. 14-cv-3728 (KBF), 2016 WL 93864, at *28 n.36 (S.D.N.Y. Jan. 7, 2016) ("*Zinc I*").

The SAC is the Plaintiffs' final attempt to plead a Section 2 claim.  The SAC fails to do so.  Despite their comments at oral argument, the Plaintiffs lack facts that demonstrate Glencore Ltd.'s monopolistic activity in the physical zinc market; instead the SAC merely reasserts the very same facts that were in the CAC, but switches the allegedly monopolized market from the "LME Zinc Warehouse Services" market to the "LME U.S. Zinc" market.  The

redline that Plaintiffs have filed underscores the absence of *new* facts, as distinct from facts that have merely been shuffled from one place in the pleading to another.  (ECF No. 163-1.)  The SAC is as deficient in pleading a Section 2 claim as the CAC, and should therefore be dismissed.

Apart from the Plaintiffs' failure to cure the deficiencies in the CAC, the SAC, even if considered de novo, fails to state a claim for monopolization for three distinct reasons.

*First*, the SAC does not adequately allege product and geographic markets.  The SAC asserts that the relevant market is "LME U.S. Zinc," which the SAC defines as Special High Grade ("SHG") zinc.  (SAC ¶ 90.)  But the SAC is devoid of factual allegations demonstrating the lack of substitutability of other grades of zinc.  The SAC also lacks factual allegations demonstrating the unavailability of alternative sources of zinc outside the U.S.  To the contrary, the SAC admits that a large majority of zinc consumed in the United States is imported, and that four of the five plaintiffs bought zinc from Teck, a competing supplier based in Canada, but not any from Glencore Ltd.  (SAC ¶¶ 31, 38, 45, 49.)  These admissions underscore the lack of a Glencore Ltd. monopoly as well as the availability of supply from outside the United States.

*Second*, the SAC does not allege facts showing that Glencore Ltd. has monopoly power in the LME U.S. Zinc market.  Specifically, the SAC does not allege facts showing that Glencore Ltd. has the ability to control physical SHG zinc prices or to exclude competition.  Indeed, the SAC suggests that the very opposite is true, as it admits that four of the five plaintiffs purchased zinc from Teck.  (SAC ¶¶ 31, 38, 45, 49.)  And the SAC, as well as the redline showing the now-dismissed CAC, alleges that various trading companies including Goldman, JPMorgan, and Noble hold substantial quantities of SHG zinc in the U.S.  (SAC ¶¶ 153-54; ECF No. 163-1 at 21-26, 88, 90-91.)  Plaintiffs cannot avoid their own factual allegations that they

pleaded in the SAC.  Nor does the SAC allege Glencore Ltd.'s percentage share of the physical market, focusing instead on irrelevant assertions about Glencore plc's activities in the world market.

*Third*, the SAC does not allege facts showing that Glencore Ltd. unlawfully attained or maintained its purported monopoly.

Next, for the same reasons that the SAC does not state a claim for monopolization of the LME U.S. Zinc Market, it also does not state a claim for attempted monopolization of the LME U.S. Zinc Market.  The SAC does not allege facts demonstrating that Glencore Ltd. was dangerously close to obtaining monopoly power or that it engaged in any anticompetitive activity in that market.

Finally, the SAC does not state a claim for illegal merger under Section 7 of the Clayton Act.  There are no factual allegations that the vertical acquisition foreclosed competitors of Glencore Ltd. from competing in the market for LME U.S. Zinc or foreclosed competitors of Pacorini USA from competing in the market for LME Zinc Warehouse Services in the United States.

For each of these reasons, the SAC fails to state a claim.  The SAC should be dismissed with prejudice.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS THE SECTION 2 MONOPOLIZATION CLAIM AGAINST GLENCORE LTD.

The SAC does not allege facts showing that Glencore Ltd. monopolized the market for LME U.S. Zinc in violation of Section 2.  Instead of alleging facts showing Glencore Ltd.'s monopolization of the LME U.S. Zinc Market, Plaintiffs have merely pleaded the same facts that were already in the CAC, and redesignated them as supposedly demonstrating a

monopoly in the market for LME U.S. Zinc.  For the reasons set forth in *Zinc I*, those allegations

fail to state a claim for monopolization.  2016 WL 93864, at *26-29.  For this reason alone, the

Court should dismiss the SAC.

       Apart from that, the Court should dismiss the SAC for three distinct reasons:  (a)

the SAC does not adequately allege a relevant market; (b) the SAC does not allege facts showing

that Glencore Ltd. has monopoly power in the market for LME U.S. Zinc, and alleges facts that

repudiate such an allegation; and (c) the SAC does not allege facts showing anticompetitive

conduct by Glencore Ltd. that enabled it to attain or maintain a monopoly.

### A.    The SAC Should Be Dismissed Because it Does Not Adequately Allege a Relevant Market

       The Section 2 claim should be dismissed because the SAC does not plausibly

allege a relevant market that has been monopolized.  "The relevant market is the 'area of

effective competition,' which is determined by defining relevant product and geographic

markets."  *Zinc I*, 2016 WL 93864, at *27 (quoting *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d

101, 105 (2d Cir. 2002)).  An antitrust claim is "subject to dismissal when plaintiff fails to allege

a plausible explanation as to why a market should be limited in a particular way."  *Zinc I*, 2016

WL 93864, at *27 (citing *Todd v. Exxon Corp.*, 275 F. 3d 191, 200 nn.3-4 (2d Cir. 2001)).  The

SAC does not allege any facts to support the proposed product and geographic markets.

    1.    <u>The SAC Does Not Adequately Allege a Relevant Product Market</u>

       A "relevant product market consists of products that have reasonable

interchangeability for the purposes for which they are produced—price, use and qualities

considered.  Products are considered reasonably interchangeable if consumers treat them as

acceptable substitutes."  *Zinc I*, 2016 WL 93864, at *27 (internal citations and quotation marks

omitted).  Courts will dismiss complaints that do not contain sufficient factual allegations

regarding the interchangeability of substitute products.  *See, e.g.*, *Madison 92nd Street Assocs., LLC v. Courtyard Mgmt. Corp.*, 624 F. App'x 23, 29 (2d Cir. 2015) (affirming dismissal of complaint because the relevant market did not encompass all interchangeable substitute products); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008) (affirming dismissal of complaint because proposed relevant market "does not encompass all interchangeable substitute products"); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2014 WL 4277510, at *36 (S.D.N.Y. Aug. 29, 2014) ("*Aluminum I*") (dismissing complaints because, among other things, "[n]o complaint cites facts regarding the interchangeability of products").

The SAC defines the relevant product market as the "market for Special High Grade Zinc ['LME U.S. Zinc'] or the market for selling such zinc[.]"  (SAC ¶ 90.)  While the SAC asserts in conclusory fashion that "[t]here are no reasonable substitutes for LME-grade zinc, which has specific industrial uses" and that "[d]emand for primary zinc is relatively price inelastic" (SAC ¶¶ 95, 99), the SAC does not allege any non-conclusory facts that show the lack of interchangeability of SHG zinc with other grades of zinc.  Notably, the SAC does not assert that in the face of increased SHG zinc prices, consumers would not turn to other grades of zinc.  Indeed, as if to emphasize this omission, three of the five named Plaintiffs claim only that they purchased "physical zinc," not "SHG zinc," the allegedly monopolized product.   (SAC ¶¶ 28, 35, 42.)

2.    The SAC Does Not Adequately Allege a Relevant Geographic Market

The SAC fails to properly allege a relevant geographic market.  The geographic market "encompasses the geographic area in which purchasers of the product can practicably turn for alternative sources of the product" and is "determined by how far consumers will go to obtain the product or its substitute in response to a given price increase and how likely it is that a

price increase for the product in a particular location will induce outside suppliers to enter that market and increase supply-side competition in that location." *Zinc I*, 2016 WL 93684, at *27 (internal citations and quotation marks omitted). Courts dismiss complaints that do not properly allege a geographic area of effective competition. *See Aluminum I*, 2014 WL 4277510, at *37 ("There are insufficient allegations as to where this product enters the U.S. and its distributional reach for the Court to draw any conclusions as to likely geographic boundaries of the relevant market.").

The SAC does not allege *any* facts that support the proposed geographic market, *i.e.*, "the market for selling [SHG] zinc in the United States (LME U.S. Zinc Market)." (SAC ¶ 90.) To the contrary, the SAC admits that zinc production "occurs on a global basis" and that zinc is "shipped throughout the globe." (SAC ¶ 101.) The SAC further admits that the "U.S. imports substantial quantities of zinc, primarily from Canada, which is part of NAFTA, but also from Europe and Asia" and that the U.S. "imports approximately 75% of the refined zinc used domestically." (SAC ¶¶ 97 n.17, 101.) In view of these admissions in the SAC, the conclusory assertions in the SAC do not render it plausible that a U.S. consumer would fail to turn to a non-U.S. supplier of zinc in the face of increased LME U.S. Zinc prices.

In sum, the SAC fails to adequately allege a relevant product or geographic market. The SAC should be dismissed for this reason alone.

**B.   The SAC Should Be Dismissed Because it Does Not Allege Facts Showing Glencore Ltd.'s Monopoly Power in the LME U.S. Zinc Market**

The SAC should be dismissed because it does not allege facts showing that Glencore Ltd. possesses monopoly power (also known as "market power") in the relevant market. There are two ways a plaintiff can plead that a defendant has monopoly power: (a) through direct evidence of the defendant's ability to control prices or exclude competition in the

relevant market; or (b) through indirect evidence, such as the defendant's share of the relevant market, and the existence of barriers to entry. *Zinc I*, 2016 WL 93864, at \*26. The SAC does not plead either direct or indirect evidence that Glencore Ltd. has monopoly power in the market for LME U.S. Zinc. Indeed, the allegations in the SAC show the opposite.

        1.      The SAC Does Not Plead Direct Evidence of Glencore Ltd.'s <u>Monopoly Power in the Market for LME U.S. Zinc</u>

The SAC does not allege facts that directly demonstrate Glencore Ltd.'s monopoly power in the market for LME U.S. Zinc. To plead direct evidence of monopoly power, a plaintiff must set forth specific facts that demonstrate the defendant's "control of prices or the exclusion of competition." *Id.*

The SAC does not allege facts showing that Glencore Ltd. unilaterally controls SHG zinc prices. Instead, the SAC alleges – just as the CAC alleged – that Glencore Ltd. and its "affiliates" engaged in zinc warranting and cancellation activity at Pacorini USA's LME warehouses that led to queues at Pacorini USA warehouses and increased zinc premiums. (SAC ¶¶ 102, 115, 120, 122, 136.) This allegation merely repeats what was already pleaded – and dismissed – in the CAC, except that the SAC now alleges that these very same actions are part of the physical zinc market, which is "affected by the market for services for LME Zinc Warehouses." (SAC ¶ 91.) Despite Plaintiffs' attempt to re-label their allegations pertaining to a different market, the Court has already determined that these activities did not constitute a Section 2 violation and that "Plaintiffs' allegations that Glencore affiliates were responsible for cancelling large volumes of zinc are wholly conclusory and are insufficient to show monopoly power in the physical zinc market." *Zinc I*, 2016 WL 93864, at \*29 n.39. Moreover, while Plaintiffs allege that Glencore Ltd. and others were involved in actions that had the effect of raising SHG zinc premiums, they have not pled that Glencore Ltd. itself *controls* the price for

physical SHG zinc, or that by virtue of its percentage share of the market, Glencore Ltd. had the unilateral ability to set the price at which SHG zinc is sold in the U.S.  There are also no allegations that other suppliers did not have the ability to enter the market and sell physical zinc at lower prices than Glencore Ltd.'s price.  *See PepsiCo*, 315 F.3d at 108 (finding no direct evidence of monopoly power because defendant did not control the market as a whole and defendant's competitor was able to lower its price in order to compete with defendant).

The SAC also does not allege facts that demonstrate that Glencore Ltd. excluded any actual or potential competitors who attempted to sell SHG zinc in the U.S.  To the contrary, the SAC admits that four of the five named Plaintiffs purchased zinc from Teck, a producer not affiliated with Glencore Ltd.  (SAC ¶¶ 31, 38, 45, 49.)  Plaintiffs further concede in the SAC and in the redline of the now-dismissed CAC that other trading firms hold large quantities of SHG zinc in the U.S., which they are of course free to sell.  (*See, e.g.*, SAC ¶¶ 153-54; ECF No. 163-1 at 21-26, 88, 90-91.)

Plaintiffs have thus failed to plead direct evidence that would support a claim of monopoly by Glencore Ltd. in the market for LME U.S. Zinc.

2.    The SAC Does Not Plead Indirect Evidence of Glencore Ltd.'s Monopoly Power in the LME U.S. Zinc Market

The SAC also does not allege facts from which the Court could indirectly infer Glencore Ltd.'s monopoly power in the market for LME U.S. Zinc.  "Indirect proof of market power, that is, proof that the defendant has a large share of the relevant market, is a surrogate for direct proof of market power."  *Zinc I*, 2016 WL 93864, at *26 (quoting *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 227 (2d Cir. 2006)).  A "market share of over 70 percent is usually strong evidence of monopoly power."  *Zinc I*, 2016 WL 93864, at *26 (quoting *Tops Mkts., Inc. v. Quality Mkts. Inc.*, 142 F.3d 90, 99 (2d Cir. 1998)).

-8-

The SAC does not allege *any* facts demonstrating Glencore Ltd.'s percentage market share of LME U.S. Zinc.  The SAC makes sweeping allegations that "Glencore plc" trades 60% of the "addressable" zinc globally, and then one sentence later attributes those same facts to the undefined and ambiguous entity "Glencore."  (SAC ¶ 64.)  This allegation contravenes the Court's admonition to avoid grouping multiple entities "who are affiliated together with a single name."  *Zinc I*, 2016 WL 93864, at *32.  Setting aside that Plaintiffs do not even attribute these alleged figures to Glencore Ltd., they have nothing to do with the market for SHG zinc sold in the U.S.[1]  Indeed, the referenced allegation makes no distinction between the "addressable" market for SHG zinc as opposed to other grades of zinc.   (SAC ¶ 64.)

The best the SAC can muster is that Glencore Ltd. has an exclusive offtake agreement with Nyrstar, the only U.S.-based zinc producer.  (SAC ¶¶ 100, 138-41, 143.)  The fact of an exclusive offtake agreement with Nyrstar sheds no light on Glencore Ltd.'s share of the U.S. market, for the simple reason that, as the SAC concedes, U.S.-produced zinc encompasses just a small portion of zinc consumed in the United States, as the vast majority is imported.  (SAC ¶¶ 101, 142).[2]

Thus, according to publicly available data published on the U.S. Geological Survey website – cited by Plaintiffs (SAC ¶¶ 70, 139) – during the period from 2011-2015, U.S. primary zinc production ranged between 106,000 MT and 125,000 MT, while U.S. zinc consumption was far greater, ranging between 902,000 MT and 965,000 MT.  *See* U.S. Dep't of

---

[1]     Moreover, as explained in the prospectus cited in the SAC (SAC ¶ 64), the "addressable" market does not constitute the entire market for a given commodity.  Among other things, it excludes metal sold to end users and metal produced in China.  *Prospectus*, Glencore International plc 43-44 (May 3, 2011), http://www.glencore.com/assets/investors/doc/transaction_archive/ipo/Final-Prospectus-3-May-2011-lowres.pdf.

[2]     The SAC is ambiguous as to when it is referring to SHG zinc, and when it is referring to zinc in general. Plaintiffs have the burden of pleading, and to the extent they blur the line between SHG zinc and other zinc, they undermine their proposed market definition.  In any event, Plaintiffs should not receive the benefit of the doubt from ambiguous pleading.

the Interior, U.S. Geological Survey, *Mineral Commodity Summaries, Zinc* (January 2016),

http://minerals.usgs.gov/minerals/pubs/commodity/zinc/mcs-2016-zinc.pdf.  Accordingly, during

this period, U.S. primary zinc production supplied only about 11% to 13% of U.S. zinc

consumption.  The SAC alleges no facts to the contrary, and no facts that show that these

numbers are not reflective of the proportion of SHG zinc consumed in the United States that is of

domestic origin.

        The SAC alleges that Glencore Ltd. and its "affiliates" warehouse large quantities

of SHG zinc in LME warehouses.  (SAC ¶¶ 122-36.)  However, these allegations do not cure any

of the deficiencies in the SAC.  The allegedly monopolized market is for SHG zinc sold in the

U.S.  The SAC, however, concedes that LME warehouse stocks are not the only source of SHG

zinc, and that a U.S. zinc consumer can obtain SHG zinc from a producer, a trading company or

a distributor, or from inventory held in non-LME warehouses.  (SAC ¶ 98.)  Thus, the fact that

Glencore Ltd. or its affiliates allegedly stored a substantial quantity of SHG zinc in LME

warehouses does not evidence Glencore Ltd.'s monopoly power in the market for SHG zinc sold

in the United States.

        Finally, the SAC does not allege facts showing the existence of any significant

barriers that blocked competitors' entry or expansion in the LME U.S. Zinc Market.  *See*

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 622 (S.D.N.Y.

2013) (dismissing Section 2 claim because "[p]laintiffs provide no additional evidence

suggesting monopoly power, such as large barriers to entry").  The SAC contains the conclusory

allegation that "[h]igh initial capital investments and substantial sunk costs are natural barriers to

entry or expansion of zinc production."  (SAC ¶ 97.)   Even assuming these are natural barriers to

*producing* zinc in the U.S., the SAC does not allege any barriers that prevented any other

companies from *selling* SHG zinc in the United States.  Nor does the SAC identify any

competitor that was prevented from selling SHG zinc in the U.S.  The SAC admits the very

opposite, as multiple Plaintiffs admit they purchased zinc from Teck.  (SAC ¶¶ 31, 38, 45,

49.)  And the redline showing Plaintiffs' changes to the now-dismissed CAC reveals Plaintiffs'

earlier allegation that other trading firms owned substantial quantities of SHG zinc in the U.S.

(ECF No. 163-1 at 21-26, 88, 90-91.)

      In sum, rather than pleading plausible direct or indirect evidence of Glencore

Ltd.'s supposed monopoly power in "LME U.S. Zinc" market, Plaintiffs have merely added

conclusory references regarding Glencore Ltd.'s supposed power in the "LME U.S. Zinc" market

to the factual allegations contained in the now-dismissed CAC.  Plaintiffs' approach thus

blatantly ignores the Court's statement in *Zinc I* that:

> if plaintiffs do hope to successfully re-plead [their Section 2]
> claims, they will have to do significantly more than add conclusory
> references to the "LME U.S. Zinc Market" to the existing
> allegations in paragraphs 277-290; they have to plausibly show
> that Glencore Ltd. and/or Pacorini have monopoly power (or came
> dangerously close to obtaining it) in that market.

*Zinc I*, 2016 WL 93864, at *28.  The SAC should be dismissed for this reason alone.

**C.**    **The SAC Should Be Dismissed Because It Does Not Allege Facts Showing
that Glencore Ltd. Unlawfully Acquired or Maintained Its Alleged Monopoly
Through Anticompetitive Conduct**

      The SAC also does not state a claim under Section 2 because it does not allege

facts showing that Glencore Ltd. acquired or maintained its alleged monopoly by anticompetitive

conduct in the physical market.  *Zinc I*, 2016 WL 93864, at *26.  Monopoly power, without

more, is not unlawful.  Indeed, the Supreme Court has recognized that "mere possession of

monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it

is an important element of the free-market system." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

To allege a Section 2 claim, monopoly allegations must be "accompanied by an element of anticompetitive conduct." *Id.  See also Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 218 (S.D.N.Y. 1998) ("The mere possession of monopoly power does not *ipso facto* condemn a market participant.") (citation omitted).  Monopoly power achieved or maintained by "superior product, business acumen, or historic accident" is not actionable under Section 2. *Zinc I*, 2016 WL 93864, at *26 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966)).

The SAC lists six instances of putative "anticompetitive conduct" through which Glencore Ltd. supposedly attained or maintained a monopoly of the LME U.S. Zinc Market. (SAC ¶ 228.)  Only one of these even concerns the market for physical zinc; the other five are borrowed from the dismissed CAC and concern the warehousing market.

Individually and collectively, these allegations of anticompetitive conduct do not meet the Plaintiffs' burden for pleading a Section 2 claim:

1)      The SAC alleges, in conclusory fashion, that Glencore Ltd. "[a]cquir[ed] effective control over the supply of LME U.S. Zinc."  (SAC ¶ 228.)  As explained above, this assertion is not supported by factual allegations.  The SAC does not allege how much SHG zinc was sold by Glencore Ltd. in the U.S., or the proportion of such sales to total U.S. sales.  And the SAC contradicts itself when it admits that four of the five named Plaintiffs purchased zinc from a different supplier.  (SAC ¶¶ 31, 38, 45, 49.)  The SAC itself even alleges that other trading companies, including Goldman, JPMorgan, and Noble, hold substantial quantities of SHG zinc in the U.S.  (SAC ¶¶ 153-54.)

2) The SAC asserts that Glencore Ltd. "[m]anipulat[ed] zinc warehouse supplies." (SAC ¶ 228.) The SAC appears to be referring to the alleged 2012 load-out agreement concerning metal held at Pacorini USA warehouses, the Queue Manager spreadsheet allegedly kept by Pacorini USA, and/or the allegedly false bills of lading prepared by Pacorini USA. But those allegations all concern *warehousing* practices. They do not demonstrate anticompetitive conduct tied to Glencore Ltd.'s acquisition or maintenance of monopoly power in the market for SHG zinc sold in the U.S., and were dismissed by this Court as insufficient even to plead antitrust violations in relation to the LME Zinc Warehouse Services market. *Zinc I*, 2016 WL 93864, at *28-29.[3]

3) The SAC alleges that Glencore Ltd. "[m]anipulat[ed] LME rules." (SAC ¶ 228.) The Court previously ruled that these allegations do not support a Section 1 claim. *Zinc I*, 2016 WL 93864, at *21. Nothing in the SAC justifies a different outcome in the Section 2 context. The SAC does not connect the alleged manipulation of LME rules with eliminating competition in the market for LME U.S. Zinc. The SAC does not allege any instance in which, as a result of Glencore Ltd.'s supposed manipulation of the rules, the LME took any action to prevent any entity from competing in the market for LME U.S. Zinc.

The allegation that Glencore Ltd. manipulated LME rules is also factually deficient. The SAC alleges (again, in conclusory fashion) that, as a Category 5 member of the LME, Glencore Ltd. had a "controlling position." (SAC ¶ 106.) However, as evidenced by information on the publicly available LME website – cited numerous times by Plaintiffs (SAC ¶¶ 4, 80-81, 85-86, 94, 113, 189) – a different company, Glencore (UK) Ltd., is and has been a

---

[3]     Indeed, in dismissing the CAC, the Court characterized the alleged 2012 load-out agreement as "output neutral (or even enhancing)" and "no more than one agreement to prioritize and organize the loading out of zinc from Pacorini's New Orleans warehouses." *Zinc I*, 2016 WL 93864, at *20.

Category 5 member of the LME.  *See Associate trade members – category 5*, London Metal Exchange, https://www.lme.com/trading/membership/category-5-associate-trade/ (last visited Feb. 29, 2016).[4]

   The SAC also alleges that Glencore Ltd. was able to manipulate LME rules through its "important decision-making positions" on LME committees.  (SAC ¶¶ 106-07, 115.)  The SAC alleges that Javier Suarez represents "Glencore" on the LME Lead and Zinc Committee and Peter Waskzis represents "Glencore" on the LME Warehousing Committee (SAC ¶¶ 106-107.)  However, the LME website expressly states that Mr. Suarez is employed by Glencore International AG, and that only warehousing companies (not trading companies like Glencore Ltd.) have representatives on the Warehousing Committee.  *See Lead and Zinc Committee*, London Metal Exchange, https://www.lme.com/about-us/corporate-structure/committees/lead-and-zinc-committee/ (last visited Feb. 29, 2016); *Warehousing Committee*, London Metal Exchange, https://www.lme.com/en-gb/about-us/corporate-structure/committees/warehousing-committee/ (last visited Feb. 29, 2016).[5]  The SAC also does not specify how having one employee on a multi-person committee that is not alleged to be influential enabled Glencore Ltd. to manipulate LME rules in order to obtain a monopoly in the market for SHG zinc sold in the U.S.  *See Aluminum I*, 2014 WL 4277510, at *33 (finding that

---

[4]  The SAC also does not explain the significance of being a Category 5 member, or how being one of the numerous members of the LME (along with other zinc trading companies) would enable Glencore Ltd. to attain a "controlling position" that would empower it to manipulate LME rules to its own anticompetitive advantage.  (SAC ¶ 106.)  To the contrary, the LME website makes clear that membership confers trading privileges, not decision-making ability.  *Membership*, London Metal Exchange, https://www.lme.com/en-gb/trading/membership/ (last visited Feb. 29, 2016).

[5]  The SAC also alleges that employees of Glencore Ltd.'s affiliates were members of the LME Aluminum Committee and the LME Copper Committee.  (SAC ¶ 106.)  The SAC does not allege that any employees of Glencore Ltd. ever sat on either of those two committees.  And the SAC fails to connect the LME Aluminum Committee or the LME Copper Committee to the Section 2 claim.

plaintiffs had not alleged that the Warehousing Committee had "standalone decision-making abilities" or that it was "even . . . particularly influential").

        4)      The SAC alleges that Glencore Ltd. "[r]esist[ed] LME reforms." (SAC ¶ 228.) The SAC does not allege that Glencore Ltd. played any role in the LME's decision not to adopt the policy recommendations of consultants Europe Economics, does not specify how Glencore Ltd. otherwise resisted LME reforms, and does not connect such alleged resistance with Glencore Ltd.'s acquiring or maintaining a monopoly in the market for SHG zinc sold in the U.S. The SAC does not allege that any potential competitors were unable to sell LME U.S. Zinc due to Glencore Ltd.'s alleged resistance of LME reforms.

        5)      The SAC alleges that Glencore Ltd. engaged in "illicit incentive arrangements." (SAC ¶ 228.) But the SAC does not connect the payment of incentives by warehousing companies – which the Court has previously ruled is "consistent with competitive behavior," *Zinc I*, 2016 WL 93864, at *21 – with Glencore Ltd.'s elimination of competition in the market for SHG zinc sold in the U.S. This allegation is factually deficient because Glencore Ltd. is not alleged to be a warehousing company, and thus would not have been in a position to pay incentives to attract zinc into any warehouses.[6]

        6)      The SAC alleges that Glencore Ltd. engaged in "shadow warehousing," which is "the practice of moving metal, such as physical zinc, from LME warehouses to areas not registered as LME warehouses." (SAC ¶¶ 180, 228.) The Court has previously ruled that "there is nothing inherently problematic or suspect about moving metal off-warrant." *Zinc I*,

---

[6]      While the SAC alleges that "Glencore [sic] paid incentives," (SAC ¶ 177), this allegation makes no sense unless it is read to mean that Pacorini USA, which, unlike Glencore Ltd., is a warehouse operator, paid incentives. Indeed, the article the SAC cites in support of this allegation explicitly states that Pacorini USA paid incentives. (SAC ¶ 177 n.81.)

2016 WL 93864, at *21.  Moreover, the SAC does not connect the movement of zinc off-warrant with eliminating competition in the market for selling SHG zinc in the U.S.

In sum, the SAC does not plead facts showing any anticompetitive conduct by Glencore Ltd.  The Section 2 claim should be dismissed for this reason as well.

## II.     THE SAC DOES NOT ADEQUATELY PLEAD A SECTION 2 ATTEMPTED MONOPOLIZATION CLAIM AGAINST GLENCORE LTD.

To state a claim for attempted monopolization, a plaintiff "must allege plausible facts supporting that the defendant has engaged in predatory or anticompetitive conduct, with a specific intent to monopolize a particular and defined market, and a dangerous probability of success."  *Zinc I*, 2016 WL 93864, at *29 (citations omitted).  A "plaintiff must also allege that anticompetitive conduct occurring in connection with obtaining or retaining a monopoly position is proximately related to plaintiffs' injuries."  *Id.* (citations omitted).

The SAC's claim for attempted monopolization is virtually identical to the claim for monopolization.  (*Compare* SAC ¶¶ 225-31 *with* SAC ¶¶ 232-38.)  For the same reasons the SAC does not state a claim for monopolization against Glencore Ltd., it fails to state a claim for attempted monopolization.  *Zinc I*, 2016 WL 93864, at *29 (dismissing attempted monopolization claim for the same reasons the Court dismissed the monopolization claim).

In addition, for the reasons set forth above:

- The SAC does not adequately allege that LME U.S. Zinc is a plausible relevant product and geographic market to support an attempted monopolization claim.  *See Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485-86 (S.D.N.Y. 2011) (dismissing attempted monopolization claim for failure to plead a relevant market); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 142-43 (E.D.N.Y. 2010) (same).

- The SAC does not allege any facts establishing Glencore Ltd.'s percentage share of the market for LME U.S. Zinc, let alone sufficient facts showing that Glencore Ltd. has a "dangerous probability" of monopolizing that market.  There are no allegations that Glencore Ltd. is dangerously close to being able to control prices or exclude competitors for SHG zinc, nor are there any allegations that other suppliers are dangerously close to being unable to sell SHG zinc at prices below any price affected by Glencore Ltd.  *See Bookhouse*, 985 F. Supp. 2d at 623 (dismissing attempted monopolization claim because plaintiff did not plead any facts that defendant had a dangerous probability of achieving monopoly power); *City of New York v. Coastal Oil New York, Inc.*, No. 96-cv-8667 (RPP), 1998 WL 82927, at *3-5 (S.D.N.Y. Feb. 25, 1998) (dismissing attempted monopolization claim because plaintiffs had not alleged that defendant had a sufficiently high share of the relevant market to constitute monopoly power).

- For the same reasons that the SAC does not allege facts showing anticompetitive conduct by Glencore Ltd. sufficient to sustain a claim for monopolization, the SAC does not allege facts showing anticompetitive conduct by Glencore Ltd. sufficient to sustain a claim for attempted monopolization.  *See Affinity LLC v. GfK Mediamark Research & Intelligence, LLC*, 547 F. App'x 54, 57 (2d Cir. 2013) (affirming dismissal of attempted monopolization claim because plaintiff did not plead any anticompetitive behavior); *Navarra*, 820 F. Supp. 2d at 487 (dismissing attempted monopolization claim because plaintiff did not plead any anticompetitive behavior).

    For all of these reasons, the attempted monopolization claim should be dismissed.

### III.   THE SAC DOES NOT ADEQUATELY PLEAD AN ILLEGAL MERGER UNDER SECTION 7 OF THE CLAYTON ACT

For the first time since the first zinc complaint was filed in May 2014, Plaintiffs have asserted a claim under Section 7 of the Clayton Act, 15 U.S.C.  § 18.  The SAC alleges that the acquisition of Pacorini USA by Glencore Ltd. "has substantially lessened competition or tended to create a monopoly in the market for LME U.S. Zinc." (SAC ¶ 240.)   But the SAC is curiously silent about how that could be so.  The SAC's only elaboration on that claim is the allegation that the acquisition increased concentration and tended to create a monopoly "by giving Glencore control over a substantial portion of the market for warehousing services of LME U.S. Zinc thereby helping to effectuate Glencore's monopolization of that market."  (SAC ¶ 241.)

There is no allegation in the SAC that Pacorini USA and Glencore Ltd. are or were competitors of one another.  Pacorini USA is alleged be in the warehouse services market, and Glencore, Ltd. is alleged to be in the physical zinc market.  Thus, Plaintiffs are challenging a merger that is vertical rather than horizontal.

It is generally recognized that vertical mergers tend to be efficiency enhancing (or at least competitively neutral).  *See* IVA Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1003 (3d ed. 2009) ("the great majority of vertical mergers are procompetitive").  But even if such a merger might be anticompetitive in some circumstances, the SAC is devoid of any factual allegations that might support such a claim, and such factual allegations as can be found in the SAC actually contravene such a claim.

The theoretical rationale for concern about the competitive effects of a vertical merger traditionally is that the combination of two entities might harm competition by foreclosing competitors of at least one of the merging firms.  *See id.* ¶ 1004a; *Brown Shoe Co. v.*

*United States*, 370 U.S. 294, 328-30 (1962).  As applied here, that would presumably involve

concern that the acquisition of Pacorini USA by Glencore Ltd. would foreclose either (1)

competitors of Glencore Ltd. from access to LME Zinc Warehouse Services in the United States

or (2) competitors of Pacorini USA from obtaining LME U.S. Zinc to store in their warehouses.

        The allegations in the SAC do not support these concerns.  In fact, they refute

them.  The redline of the now-dismissed CAC includes allegations that the Goldman Defendants

and the JPMorgan Defendants owned numerous LME-certified warehouses in the United States

that store substantial volumes of LME-certified metals.  (ECF No. 163-1 at 20, 22, 26.)  Though

these allegations were among those deleted from the SAC, these allegations are confirmed by the

LME website.  *Active Listed Warehouses*, London Metal Exchange (Feb. 16, 2016),

https://www.lme.com/~/media/Files/Restricted%20Website%20Users/Warehouse%20List/Tradi

ng/Warehousing%20and%20brands/Approved%20warehouses/LME%20Listed%20Warehouses.

pdf.  And there are additional LME-certified warehouses that are not owned by the Goldman

Defendants, the JPMorgan Defendants, or Pacorini USA.  *Id.*

        The SAC does not even try to claim that traders or other owners of metal lacked

the ability to store zinc at the multiple warehouses in the U.S.   There is no suggestion, let alone

any allegation, that competitors of Glencore Ltd. were or are foreclosed from access to space in

LME-certified warehousing by virtue of Glencore Ltd.'s acquisition of Pacorini USA.

        Nor are there any suggestions, let alone allegations, that competitors of Pacorini

USA have been foreclosed from obtaining zinc (or any other LME metals, for that matter) from

smelters, traders, or financial investors by virtue of its acquisition by Glencore Ltd.  Again,

Plaintiffs' Section 7 claim runs head-long into Plaintiffs' factual allegations.  There was, after

all, a worldwide economic recession beginning in 2008, and zinc production is alleged to have

exceeded zinc consumption during the proposed class period.  (SAC ¶ 148.)  Perhaps the only point on which Plaintiffs and Defendants agree is that there was an oversupply of zinc, which renders implausible any claim that warehouse competitors of Pacorini USA were somehow foreclosed from sources of zinc.

Plaintiffs' Section 7 claim is therefore wholly conclusory, devoid of factual allegations to support it, and implausible in light of the factual allegations actually found in the SAC.  That claim should be dismissed.

## CONCLUSION

The Court should dismiss the SAC, with prejudice, as to Glencore Ltd.

Dated:  New York, New York
         February 29, 2016

/s/    Eliot Lauer
Eliot Lauer (elauer@curtis.com)
Jacques Semmelman
(jsemmelman@curtis.com)
Chelsea McLean
(chelsea.mclean@curtis.com)
Michael Mix (mmix@curtis.com)
CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
101 Park Avenue
New York, NY  10178-0061
Telephone: (212) 696-6000
Facsimile:  (212) 697-1559

Attorneys for Defendant Glencore Ltd.