UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ZINC ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL CASES | Case No. 14 Civ. 3728 (KBF)<br><br>Hon. Katherine B. Forrest |

MEMORANDUM OF DEFENDANT PACORINI METALS USA, LLC
IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT</u>

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

John M. Nannes
John H. Lyons
Tiffany Rider
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  (202) 371-7000
Facsimile:  (202) 661-9191

Jay B. Kasner
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile:  (917) 777-2628

*Counsel for Pacorini Metals USA, LLC*

February 29, 2016

**TABLE OF CONTENTS**

I. Statement of the Case ................................................................................................ 2

II. The Standard for Motions to Dismiss ....................................................................... 5

III. The SACAC's Section 2 Claims Are Still Deficient and Should Be Dismissed ................. 6

    A. The Allegations in the SACAC ........................................................................ 6

    B. Plaintiffs' Section 2 Claims Should be Dismissed ........................................... 8

IV. The SACAC Fails to State a Plausible Section 7 Claim ........................................ 11

V. Conclusion ............................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 5

*Blue Shield of Virginia v. McCready*,
  457 U.S. 465 (1982) ................................................................................................... 8

*Concord Associates, L.P. v. Entertainment Properties Trust*,
  No. 12 Civ. 1667(ER), 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) ....................... 10

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998) .......... 2, 9

*Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*,
  485 F. Supp. 2d 387 (S.D.N.Y. 2007) ........................................................................ 9

*In re Zinc Antitrust Litigation*,
  No. 14-cv-3728 (KBF), 2016 WL 93864 (S.D.N.Y. Jan. 7, 2016) ..................... *passim*


**STATUTES**

15 U.S.C. §§ 1, 2 .................................................................................................................. 2

15 U.S.C. § 18 ................................................................................................................ 2, 11


**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Pacorini Metals USA, LLC ("Pacorini USA") respectfully submits this memorandum in support of its motion to dismiss Plaintiffs' Second Amended Class Action Complaint and Jury Trial Demand (ECF No. 163) (hereinafter "SACAC").

The SACAC should be dismissed. Plaintiffs have clearly failed to cure the deficiencies that the Court found in dismissing Plaintiffs' Corrected Consolidated Amended Complaint and Jury Trial Demand (ECF No. 138)(hereinafter "CAC"). Rather than "demonstrating that they have antitrust standing and making plausible any claim that Glencore Ltd. and/or Pacorini [USA] had obtained or were dangerously close to acquiring a monopoly in the physical zinc market, or combined monopoly in both relevant markets," *In re Zinc Antitrust Litig.*, No. 14-cv-3728 (KBF), 2016 WL 93864, at *33 (S.D.N.Y. Jan. 7, 2016) (hereinafter "Zinc Opinion"), Plaintiffs have done exactly what the Court admonished them not to do, namely just add "conclusory references to the 'LME U.S. Zinc Market' to the existing allegations," which the Court had warned them would be inadequate "to successfully re-plead [their] claims." *Id*.

In fact, as to Pacorini USA, the claims in the SACAC represent a retreat from, if not outright abandonment of, the claims advanced in the CAC. Pacorini USA is alleged to operate LME-approved warehouses in the United States and to be "engaged in the zinc warehousing business." SACAC ¶¶ 66, 69. In the CAC, Plaintiffs contended that Pacorini USA had a monopoly in the "market for LME Zinc Warehouse Services," CAC ¶ 278, or a dangerous probability of obtaining one in that market. CAC ¶ 286. However, in the SACAC, Plaintiffs no longer allege that Pacorini USA had or threatened to obtain a monopoly in a warehouse services market and have shifted their focus to "the market for LME U.S. Zinc" in the United States. SACAC ¶¶ 226, 233. But, there are no allegations in the SACAC that Pacorini USA

competes in the market for LME U.S. Zinc.  As this Court held in dismissing the CAC, "a firm cannot monopolize a market in which it does not compete."  Zinc Opinion, 2016 WL 93864, at *29 (*quoting Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998)).  Therefore, Plaintiffs' Section 2 claims against Pacorini USA should be dismissed.

The SACAC contains a wholly new claim, namely that the acquisition of Pacorini USA by Glencore Ltd. violated Section 7 of the Clayton Act, 15 U.S.C. § 18, in the market for LME U.S. Zinc.  SACAC ¶ 240.  Since there is no allegation that Pacorini USA and Glencore Ltd. were competitors of one another, Plaintiffs are challenging a merger that is vertical rather than horizontal.  But the SACAC is devoid of factual allegations that would support such a claim, and such relevant allegations as can be found actually undercut any notions of competitive harm resulting from the acquisition.  Therefore, Plaintiffs' Section 7 claim against Pacorini USA also should be dismissed.

I. STATEMENT OF THE CASE

This case began with the filing of three separate actions by Plaintiffs in 2014 contending that various defendants had violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, in connection with the sale and warehousing of zinc in the United States.  Pursuant to the Court's direction, Plaintiffs filed a consolidated amended complaint on June 17, 2015 (ECF No. 106), which was subsequently corrected (ECF No. 138).  The CAC alleged that all defendants had conspired to affect the supply of physical zinc available for delivery from LME warehouses with the effect of creating supra-competitive prices of LME U.S. Zinc sold in the United States, CAC ¶ 267, and conspired to monopolize the market for LME Zinc Warehouse Services.  CAC ¶ 272.  The CAC further alleged that Glencore (defined as

Glencore Ltd. and Pacorini USA, CAC ¶ 68) had a monopoly in the market for LME Zinc Warehouse Services in the United States, CAC ¶ 278, or a specific intent and dangerous probability of success in obtaining one in that market.  CAC ¶¶ 285, 286.  All of the defendants moved to dismiss the CAC, and the Court "expended significant time considering the . . . motions."  Zinc Opinion, 2016 WL 93864, at *2.

In an opinion and order issued on January 7, 2016, the Court granted defendants' motions and dismissed the CAC in its entirety as to all defendants.  With respect to the Section 1 claim, the Court found that Plaintiffs had standing to sue, *Id.* at *14, but, after considering "[s]everal overlapping theories of a conspiratorial agreement among defendants [that] may be read into the CAC," *Id.* at *19, the Court held they had not stated a plausible claim. *Id*. at *26.  With respect to the Section 2 conspiracy claim against all defendants, the Court found that Plaintiffs lacked standing, *Id.* at *15-17, and that they had failed to state a plausible claim. *Id*. at *31-32.  These two claims were dismissed with prejudice as to all defendants. *Id*. at *33-34.

With respect to the Section 2 claims against Glencore Ltd. and Pacorini USA, the Court found that Plaintiffs lacked standing, *Id*. at *15-17, but also addressed the merits of those claims and found that they do not "pass muster." *Id*. at *26.  The Court noted that the Plaintiffs had alleged that Glencore Ltd. "has substantial influence in certain aspects of the zinc trade," *Id*. at *27, but the "only market as to which the CAC alleges that 'Glencore' has monopoly power is in the LME Zinc Warehouse Services Market." *Id*. at *28.  These allegations were insufficient as a matter of law to state a Section 2 claim:

> Glencore Ltd.'s alleged domination of certain aspects of the physical zinc market is irrelevant to a claim that it and/or Pacorini [USA] monopolize the market for LME zinc warehousing services.  This cuts to a core distinction between claims brought under Sections 1 and 2.  The Supreme Court has indicated that a Section 2 claim may not arise from monopoly power in one market causing competitive harm in a second market

3

>unless the plaintiff shows that there is a dangerous probability of success or actual monopoly in the second market.

*Id*.  The only market allegedly monopolized was the market for LME Zinc Warehouse Services, but raising the price in that market or restricting the availability of services in that market was "not the injury that plaintiffs claim to have suffered." *Id*.  Plaintiffs' "alleged injury does not arise directly from Pacorini [USA]'s dominance of the market allegedly monopolized." *Id*.  The Court also held that there were insufficient allegations of monopoly maintenance because the decision to cancel warrants is made by the warrant holder, not by the warehouse operator, so Pacorini USA lacked control over the activity alleged to cause injury.  Thus, its alleged dominance in warehousing did not translate into the power to raise the Midwest Special High Grade Premium.  *Id*. at *29.

The Court went on to find that Glencore Ltd. was "independently entitled to dismissal of this claim as to it." *Id*. at *29.  Glencore Ltd. was alleged to be a trading company, not a warehouse company, and was not alleged to control the price for LME storage.  *Id.*  Thus, it was not a competitor in the market for LME Zinc Warehouse Services, which foreclosed any claim that it monopolized that market.  *Id*.

The Court found that Plaintiffs' attempted monopolization claim "mirrors their actual monopolization claim" and "fails for the same reasons as plaintiffs' actual monopolization claim." *Id*. at *30.  The "fatal flaw" in the actual monopolization claim was that the alleged monopoly in the LME Zinc Warehouse Services market was disconnected from Plaintiffs' alleged injuries in the different market for the sale of primary zinc, and that "disconnect poses no less of an issue in the context of plaintiffs' attempted monopolization claim." *Id*.

The Court therefore dismissed Plaintiffs' actual and attempted monopolization claims against Pacorini USA and Glencore Ltd.  However, it granted Plaintiffs leave to re-plead those

4

claims because Plaintiffs had indicated at oral argument that they wished they had made their Section 2 claims more explicit with respect to "both the market for LME zinc warehousing services <u>and</u> the market for the sale of primary zinc in the United States." *Id*. at *32.

In doing so, however, the Court flagged a number of issues for Plaintiffs. First, the Court said that Plaintiffs would have to demonstrate "that they have antitrust standing and [make] plausible any claim that Glencore Ltd. and/or Pacorini [USA] had obtained or were dangerously close to acquiring a monopoly in the physical zinc market, or combined monopoly in both relevant markets." *Id*. That itself presents a significant hurdle since the Court found that "[a]s currently pled, the CAC does not plausibly allege monopoly power in the market for the sale of primary zinc." *Id*. at *28 n.36. Second, the Court advised Plaintiffs "to more clearly differentiate the roles played by Glencore Ltd. and Pacorini [USA], instead of using the generic term 'Glencore', throughout any second consolidated amended complaint." *Id*. at *33 n.41. *See also Id*. at *31-32 (reiterating rules against group pleading).

Plaintiffs filed their SACAC on February 11.

## II.     THE STANDARD FOR MOTIONS TO DISMISS

The Court addressed and applied the legal standard applicable to motions to dismiss under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in its opinion and order dismissing the CAC. Zinc Opinion, 2016 WL 93864, at *11. Pacorini USA agrees with that formulation of the standard.

Pacorini USA agrees, also, that the same standard should be applied in assessing the sufficiency of the SACAC. *Id*. at *32.

### III. THE SACAC'S SECTION 2 CLAIMS ARE STILL DEFICIENT AND SHOULD BE DISMISSED

The SACAC neither cures the deficiencies found by the Court in the CAC nor addresses the issues flagged by the Court in granting leave to amend. This can be demonstrated by first considering the changes that Plaintiffs did – or did not – make to their complaint and then by applying the Court's holdings from its Zinc Opinion to the allegations in the SACAC.

#### A. The Allegations in the SACAC

At the Court's direction, *Id*. at *34, Plaintiffs filed an amended complaint "redlined against the CAC," which facilitates a comparison between the CAC and the SACAC to identify the changes that Plaintiffs have made to their complaint. A comparison reveals the following:

First, the "Nature of the Action" has changed from monopolization "in the market for LME-licensed warehousing of zinc in the United States, North America, and/or the world" to monopolization and attempted monopolization of "the market for Special High Grade Zinc or the market for selling such zinc in the United States." *Compare* CAC ¶ 2 *with* SACAC ¶ 2. Plaintiffs no longer contend that Pacorini USA has a monopoly (or dangerous probability of obtaining one) in the LME Zinc Warehouse Services Market; rather, they contend that Pacorini USA and Glencore Ltd. have a monopoly "in the market for LME U.S. Zinc in the United States" and/or are attempting to acquire a monopoly in that market. SACAC ¶¶ 226, 233. Indeed, they even say that "[t]his case involves a single relevant market, the market for Special High Grade Zinc or the market for selling such zinc in the United States." *Id*. ¶ 90. As

6

explained more fully below, this flip flop dooms their Section 2 claims against Pacorini USA, since Plaintiffs do not allege that Pacorini USA competes in that market.[1]

Second, although the Court warned Plaintiffs that "the CAC does not plausibly allege monopoly power in the market for the sale of primary zinc," Zinc Opinion, 2016 WL 93864, at *28 n.36, the SACAC contains virtually no new factual allegations that support their Section 2 claims. To be sure, certain allegations have been relabeled to refer to Glencore Ltd. and/or Pacorini USA (rather than to a broader universe of defendants) and other allegations have been moved around (e.g., the allegations regarding Pacorini USA's warehouse queues were deleted from the CAC ¶¶ 178-98 and moved to a different section in the SACAC ¶¶ 152-73), but these do not constitute new substantive factual allegations. Plaintiffs have done little more than to switch references to the LME Zinc Warehouse Services Market that were in the CAC to references to the market for LME U.S. Zinc in the SACAC.

Third, Plaintiffs carry forward – virtually word for word – various allegations that this Court has already found do not make their claims plausible. *See, e.g.*, SACAC ¶¶ 106-15 (manipulating LME rules and resisting LME reforms through "control" of the LME), 176-77 (making incentive payments), 180-83 (delisting warehouses and moving metal on and off warrant). Zinc Opinion, 2016 WL 93864, at *21. Those allegations are no more indicative of

---

[1] In its memorandum in support of its motion to dismiss the CAC (ECF No. 131 at 14-22) and its reply memorandum in support of that motion (ECF No. 147 at 3-10), Pacorini USA contended that the CAC did not contain sufficient allegations of fact to support a plausible product or geographic market with respect to warehousing services. The Court did not find it necessary to address that contention. Zinc Opinion, 2016 WL 93864, at *28 n.38. Given Plaintiffs' abandonment of any claim that Pacorini USA monopolized (or attempted to monopolize) a LME Zinc Warehouse Services Market, Pacorini USA does not believe it necessary to set forth those contentions again. But insofar as the Court might deem them relevant to this motion, Pacorini USA incorporates those contentions by reference.

7

a Section 2 violation than they were of a Section 1 violation.[2] *See Id*. at *28 n.36 ("As currently pled, the CAC does not plausibly allege monopoly power in the market for the sale of primary zinc.").

### B. Plaintiffs' Section 2 Claims Should be Dismissed

Applying the Court's same reasoning and holding in the Zinc Opinion leads to the conclusion that Plaintiffs' Section 2 claims in the SACAC should be dismissed.

The Court held in its Zinc Opinion that Plaintiffs did not have standing under Section 2. Plaintiffs had alleged in the CAC that they had been injured in the market for Special High Grade Zinc by virtue of anticompetitive conduct in the LME Zinc Warehouse Services Market and sought to rely upon *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), for the proposition that the "inextricably intertwined" nature of the markets was sufficient to give them standing to sue. The Court determined, however, that "McCready's concept of inextricably intertwined markets does not extend to the claims brought under Section 2 here." Zinc Opinion, 2016 WL 93864, at *16.

In response, Plaintiffs have abandoned their contention of a monopoly in the LME Zinc Warehouse Services Market, but that mandates dismissal of their Section 2 claims against Pacorini USA because Plaintiffs no longer allege that Pacorini USA monopolized a market in which it actually competes. The SACAC alleges that Pacorini USA "owns and operates LME-

---

[2] In many respects, these allegations are even less probative of a Section 2 violation than of a Section 1 violation. For example, the CAC had contained allegations that the defendants collectively owned and controlled the LME during the class period, citing prominently to large voting interests and numerous LME committee memberships of Goldman Sachs International and its affiliates (hereinafter "GS Defendants") and JP Morgan Securities plc and its affiliates (hereinafter "JPM Defendants"). CAC ¶¶ 130-39. Plaintiffs stripped out these allegations about the GS Defendants and the JPM Defendants but left in the obviously defective contention that defendants – now consisting of just Pacorini USA and Glencore Ltd. – somehow controlled the LME. SACAC ¶ 106.

8

approved warehouses in the United States." SACAC ¶ 66. It alleges that Pacorini USA "was engaged in the zinc warehousing business." *Id*. at ¶ 69. While the SACAC alleges that Glencore Ltd. engages in trading of zinc products, *Id*., there is no allegation that Pacorini USA does so.

The SACAC thus alleges that Pacorini USA monopolizes a market in which it does not compete. The Court was confronted with a similar disconnect in connection with the CAC. There, Plaintiffs charged Glencore Ltd. with a violation of Section 2 in the LME Zinc Warehouse Services Market even though Glencore Ltd. was not alleged to compete in that market. That alone warranted dismissal of the Section 2 claims against Glencore Ltd. As the Court noted: "'[I]t is axiomatic that a firm cannot monopolize a market in which it does not compete.' Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1062 (2d Cir. 1996) vacated on other grounds, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); see also Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp., 485 F. Supp. 2d 387, 392 (S.D.N.Y. 2007)." Zinc Opinion, 2016 WL 93864, at *29. Without allegations sufficient to pierce the corporate veil, the Court held that "Glencore Ltd. may not be held liable under Section 2 simply by virtue of its ownership of Pacorini." *Id*.

This reasoning compels the same conclusion here. Pacorini USA is not alleged to compete "in the market for LME U.S. Zinc in the United States," SACAC ¶ 226, and therefore cannot monopolize that market as a matter of law. Nor does the SACAC contain allegations sufficient to pierce the corporate veil. The SACAC contains some of the same conclusory allegations that Glencore Ltd. "controls" Pacorini USA that were in the CAC, *compare* SACAC ¶ 67 *with* CAC ¶ 67, contains some other allegations that smack of group pleading (*see* SACAC ¶ 177 alleging that "Glencore" paid incentives when the article quoted refers

9

explicitly to "Pacorini"), and contains speculation about possible communications between "Glencore" and "Pacorini" (*see* SACAC ¶¶ 156, 158), but nothing that would support a finding that Pacorini USA had "failed to comply with corporate formalities . . . such that it would be appropriate to pierce the corporate veil" and make it liable under Section 2 simply by virtue of the fact that Glencore Ltd. owned it.[3]  Zinc Opinion, 2016 WL 93864 at *29.

     Finally, the SACAC contains a number of allegations – e.g., about control of the LME through membership in the LME and service on LME committees, incentive payments, shadow warehousing, delisting LME-approved warehouses in Europe, and government investigations (*see* SACAC ¶¶ 106-15, 176-79, 180-81, 182, and 192-205) – that appeared in the CAC, were addressed by Pacorini USA in its opening and reply memoranda (ECF Nos. 131, 147),  and were rejected by the Court as a basis for sustaining the conspiracy claims in the CAC.  Zinc Opinion, 2016 WL 93864, at *21-22, 24-25.  The Court further indicated that the allegations in the CAC "[did] not plausibly allege monopoly power in the market for the sale of primary zinc."  *Id*. at *28 n.36.  Since Plaintiffs have not embellished those allegations in the SACAC or proffered any reason for the Court to revisit them, Pacorini USA does not address them except, to the extent the Court might deem it necessary or appropriate, to ask that its prior responses be incorporated by reference.

---

[3] The notion of piercing the corporate veil is particularly implausible in the context of the claims alleged in the SACAC.  Typically, piercing analysis is undertaken to determine whether a parent can be held responsible for the actions of its subsidiary.  *See*, *e.g.*, *Concord Assocs., L.P. v. Entm't Props. Trust*, 2014 WL 1396524, at *26 (S.D.N.Y. Apr. 9, 2014).  Here, the question would be whether the subsidiary could be held responsible for the actions of its parent, a proposition that would imply that Pacorini USA somehow controlled Glencore Ltd.  There are no allegations in the SACAC that would support such an implausible notion.

Plaintiffs' monopolization claim against Pacorini USA thus should be dismissed, and the attempted monopolization claim should be dismissed for similar reasons. A company that does not compete in a market can no more have a dangerous probability of monopolizing that market than it can of actually monopolizing that market. The disconnect between the market in which Pacorini USA operates – the market for LME Zinc Warehouse Services in the United States – and the market that Plaintiffs claim has or might be monopolized – the market for LME U.S. Zinc in the United States – "poses no less of an issue in the context of plaintiffs' attempted monopolization claim, which is not saved by the lesser requirement that a plaintiff need only plausibly allege that a defendant came dangerously close to achieving monopoly power, rather than actual monopoly power, in a certain market." *Id.* at *30.

Pacorini USA thus respectfully submits that Plaintiffs' Section 2 claims against it should be dismissed.[4]

### IV.   THE SACAC FAILS TO STATE A PLAUSIBLE SECTION 7 CLAIM

The SACAC contains a wholly new claim, namely that the acquisition of Pacorini USA by Glencore Ltd. violated Section 7 of the Clayton Act, 15 U.S.C. § 18, in the market for LME U.S. Zinc. SACAC ¶ 240. Since there is no allegation that Pacorini USA and Glencore Ltd. were competitors of one another, Plaintiffs are challenging a merger that is vertical rather than horizontal. But the SACAC is devoid of factual allegations that would support such a claim, and such relevant allegations as can be found actually undercut any notions of competitive harm resulting from the acquisition. The grounds for dismissal of this claim are set out in

---

[4] Pacorini USA also submits that the SACAC should be dismissed for the additional reasons set forth by Glencore Ltd. in its Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint.

Glencore Ltd.'s Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint, also to be filed on this date, and Pacorini USA respectfully submits that Plaintiffs' Section 7 claim should be dismissed for the reasons stated therein.

## V.     CONCLUSION

The Court provided Plaintiffs with an opportunity to try to resuscitate their Section 2 claims but noted there were "hurdles to overcome." Zinc Opinion, 2016 WL 93864, at *33. Despite the Court's identification of those hurdles, Plaintiffs have not addressed them, let alone overcome them. Pacorini USA therefore respectfully submits that the SACAC should be dismissed, this time with prejudice, for the reasons stated herein.

Dated:     February 29, 2016
           New York, New York

   /s/ John M. Nannes
John M. Nannes
(john.nannes@skadden.com)
John H. Lyons (admitted *pro hac vice*)
(john.h.lyons@skadden.com
Tiffany Rider
(tiffany.rider@skadden.com)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone:  (202) 371-7000
Facsimile:  (202) 661-9191

Jay B. Kasner
(jay.kasner@skadden.com)
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile:  (917) 777-2628

*Counsel for Pacorini Metals USA, LLC*

12