October 4, 2019

<u>**VIA ECF**</u>

The Honorable Paul A. Engelmayer
United States District Court for the Southern
District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
Courtroom 1305
New York, NY 10007

Re: *In re Zinc Antitrust Litig.*, No. 2:14-cv-03728-PAE (S.D.N.Y.)

Dear Judge Engelmayer:

The parties submit this joint letter pursuant to the Court's Order of September 16, 2019 (ECF No. 245). As directed by the Court in that Order, we have divided this submission into twelve distinct sections.

**I.    <u>Nature of the Claims and Principal Defenses Thereto</u>**

**A.    <u>Plaintiffs' Claims</u>**

In this litigation, Plaintiffs (defined in Section II below) allege that Defendants (defined in the same section) attempted to monopolize and did monopolize the market for Special High Grade Zinc ("SHG Zinc") or the market for selling such zinc in the United States (the "LME U.S. Zinc Market")[1], in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Plaintiffs, who are manufacturers, purchased SHG Zinc in the LME U.S. Zinc Market. Second Amended Complaint ("SAC"), Dkt. No. 163, ¶¶ 27-61. Plaintiffs did so pursuant to contracts which utilized the standard industry pricing formula consisting of (1) the LME zinc price, plus (2) the Zinc Midwest Special High Grade premium price. SAC ¶ 92.

The Zinc Midwest Special High Grade premium ("SHG Zinc premium") is a representative number published weekly by private services. SAC ¶¶ 19-21. The SHG Zinc premium consists of various costs relating to SHG Zinc, including storage and transportation.

---

[1] "LME" is an abbreviation for the London Metals Exchange. The LME hosts trading in a zinc forward contract. Although such trading is largely financial trading in which no deliveries of zinc are made, some trades do result in deliveries. Such deliveries may only be made by tendering a warrant for zinc stored in an LME registered warehouse. After the warrant is cancelled, the holder of the warrant must wait until whatever "queue" exists in the wait of loadouts of the zinc from where the LME warehouse is located. Prior to the alleged conduct here, the queue was two days in length but, allegedly, the queue grew to two years in length due to the alleged conduct at issue. The LME U.S. Zinc Market consists of SHG Zinc sold in the U.S.

SAC ¶¶ 19-21, 105.  Also, the supply of SHG Zinc in LME warehouses constitutes part of the supply of SHG zinc in the United States. SAC ¶¶ 102-03, 115, 174-75, 188, 215.

Defendant Glencore controlled 100% of the production of SHG zinc in the United States and was a dominant seller of SHG zinc in the United States market for SHG zinc.[2]  Defendant Access World (USA), LLC (f/k/a Pacorini Metals USA, LLC) (referred to in this letter as "Pacorini USA"), which Glencore purchased in September 2010, owned LME warehouses which held during the Class Period 90% of the SHG zinc stored in LME warehouses located in the United States.  SAC ¶ 119.

Defendants allegedly engaged in an interrelated series of acts, all of which were designed to lengthen the time it took to load zinc out of Pacorini USA's LME warehouses in New Orleans and to inflate the SHG Zinc premium.  Such steps included, but are not limited to:

(1) "[a]cquiring control over the supply of LME U.S. Zinc," (2) "[m]anipulating zinc warehouse supplies," (3) "[m]anipulating LME rules," (4) "[r]esisting LME reforms," (5) "[m]aking illicit incentive arrangements," and (6) "[e]ngaging in shadow warehousing." (SAC ¶¶ 228, 235.)

*In re: Zinc Antitrust Litig.*, No. 14-CV-3728 (KBF), 2016 WL 3167192, at *8 (S.D.N.Y. June 6, 2016) ("*Zinc II*").

Through these steps, Defendants allegedly greatly lengthened (from approximately 2 days to approximately 2 years, SAC ¶¶ 172-73) the time that it took for someone who owned zinc in Pacorini USA's LME warehouses in New Orleans to load that zinc out of such warehouses.  SAC ¶¶ 3, 123, 136, 152, 172, 184, 188.  By lengthening the time it took to remove zinc from Pacorini USA's LME warehouses in New Orleans, Defendants increased the cost of storage component of the SHG Zinc premium, and also reduced the SHG Zinc supplies.  *Id*. ¶¶ 120-136, 178. By increasing the costs of storage, Defendants directly increased the SHG Zinc premium and the prices paid by Plaintiffs and received by Glencore for SHG zinc.  *Zinc II* at *2, 4, 8. For example, the SHG Zinc premium increased from 3.25 cents per ton to 9.25 cents per ton from May 2010 to January 2014.  SAC ¶¶ 212-213.  Through this alleged unlawful conduct, Defendants inflated the prices at which Glencore sold SHG Zinc to Plaintiffs and others in the LME U.S. Zinc Market.

_____

[2] Also, regarding Defendant Glencore, Plaintiffs allege that Glencore plc trades 60% of the world's zinc, and owns and controls 35% of the output of the world's zinc mines, including 100% of all U.S. output of primary zinc. (SAC ¶¶ 64, 100, 118, 137, 139.)  Glencore allegedly began to use the LME warehouses of Defendant Pacorini USA located in New Orleans to influence zinc prices before May 2010. SAC ¶¶ 65, 68, 189.  By September 2010 at the latest, Glencore has acquired Defendant Pacorini USA (SAC ¶ 124), which had a dominant position in LME warehousing in New Orleans, especially in zinc.  SAC ¶¶ 124, 136.  After it merged with Xstrata in 2013, Glencore plc became the world's largest commodities trading company, which plaintiffs allege enhanced its dominance in the LME U.S. Zinc Market. (SAC ¶¶ 116, 117, 143.) Glencore plc's control over LME warehouse stocks of zinc allegedly grew to more than 90% of all LME warehouse stocks of zinc. (SAC ¶ 119.)

The Court held that, by virtue of these allegations, Plaintiffs plausibly alleged that Defendants had market power in the LME U.S. Zinc Market and abused that power to inflate the SHG Zinc prices paid by Plaintiffs and received by Defendants in that market in violation of Section 2 of the Sherman Act. *E.g., Zinc II* at *16 (after noting that *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, (2d Cir. 2016) ("*Gelboim*"), ruled that the allegations of an antitrust violation were alleged in such a plausible manner that the plausibility issue did not constitute a "close call", Judge Forrest found that Plaintiffs' allegations here were "no less plausible" than those in *Gelboim*).

The Court similarly found that Plaintiffs had adequately alleged antitrust injury and standing. *Zinc II* at *12. In upholding standing, *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86 (2d Cir. 2019), relied heavily on the plausible allegations and showing that the plaintiffs purchased aluminum in the same market and at the same pricing formula in which defendants sold their aluminum. *Id., e.g.,* at *96. These same facts have already been found to be plausibly alleged in *Zinc II. Zinc II* at *12. Accordingly, the ruling in *Eastman Kodak* only further supports and enhances the sufficiency of the allegations of standing and antitrust injury made by Plaintiffs here.

### B.    Defendants' Principal Defenses to Plaintiffs' Claims

Plaintiffs' account of Defendants' market position and Defendants' actions is wrong as a matter of both fact and law. Defendants therefore deny liability and contend that Plaintiffs' case will founder on a host of factual and legal shortcomings, including the following:

- Plaintiffs will not be able to establish that either Glencore or Pacorini USA had monopoly power in any relevant market, either through proof of direct control over the price of SHG Zinc or through any other method.

- Glencore and Pacorini USA do not possess monopoly shares in any relevant market during the proposed Class Period. As Judge Forrest concluded in *Zinc II* (which assessed the sufficiency of Plaintiffs' currently operative complaint, the SAC), while Plaintiffs make many assertions about purported market shares in the SAC, Plaintiffs do not allege "any facts showing Glencore Ltd.'s and/or Pacorini's market share in the *LME U.S. Zinc Market*"—which is the relevant product and geographic market that Plaintiffs claim has been monopolized. *Zinc II,* at *17 (emphasis added). For example, while Plaintiffs alleged in the SAC (and assert again in this letter) that Glencore owns 100% of all U.S. primary zinc output, that share says nothing about Glencore's share of *SHG Zinc* that is *sold* (not just produced) in the United States; indeed, Plaintiffs themselves acknowledge that a majority of zinc sold in the U.S. is manufactured outside the U.S. *See also, e.g., id.* at *17 n.21 ("[P]laintiff's allegations as to the large percentage of SHG Zinc held in defendants' LME warehouses in comparison to all LME zinc warehouse stocks indicate little about defendants' percentage share of control of SHG Zinc sold in the United States, in light of plaintiffs' allegation that LME-registered warehouses are but one of many sources of SHG Zinc for a consumer seeking delivery in the United States." (citations omitted)).

- Plaintiffs will not be able to establish that the LME U.S. Zinc Market is a relevant product and geographic market in which to assess competitive effects, as they must do to prevail on any theory of monopolization.  Even on the pleadings, Judge Forrest noted that the allegations of the SAC "create some ambiguity as to the interchangeability between SHG Zinc and other forms of zinc." *Id.* at *18.  These defects will be fatal to Plaintiffs' claims.

- Neither Glencore nor Pacorini USA could directly control prices in the relevant market. Many other factors—including, but not limited to, those identified by Judge Forrest, such as "whether other components factor into the all-in price for SHG Zinc, how the prices of those components are determined, and what, if any, factors other than storage, warehousing and transportation costs can affect the calculation of the MW SHG premium," *id.* at *16—will prevent Plaintiffs from showing that either Glencore or Pacorini USA could exert control over the all-in SHG Zinc prices that Plaintiffs allegedly paid.

- The conduct identified by Plaintiffs did not result in any exclusion of competitors or harm to competition.

- Plaintiffs' claims conflate, with no legally cognizable justification, separate legal entities that compete in different markets, including Glencore's trading operations and Pacorini USA's warehousing business.

- A significant portion of the putative class lacks standing to bring a claim for damages. Plaintiffs have standing, at most, for purchases of SHG Zinc directly from Glencore or Pacorini USA.

- The alleged SHG Zinc delivery queue at Pacorini USA's New Orleans warehouses did not inflate the all-in price of SHG Zinc because any alleged increase in the SHG Zinc premium was offset by a corresponding decrease in the LME zinc price.

- Plaintiffs' claims for foreign purchases of zinc are barred by the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a.

- Plaintiffs will not be able to satisfy the requirements for certifying and maintaining a class action under Rule 23(b)(3).

## II.    <u>Identities of the Parties</u>

Plaintiffs are "First Level Purchasers" and/or "Direct Purchasers," as those terms are defined in the SAC. Each named Plaintiff made "first-level" purchases of LME-grade primary zinc for physical delivery in the United States and/or directly purchased LME U.S. Zinc from a Defendant during the Class Period.  Plaintiffs are Oklahoma Steel and Wire Co., Inc. ("Oklahoma Steel"); Iowa Steel and Wire Co. ("Iowa Steel"); Southwestern Wire, Inc.

("Southwestern"); Galvanizers Co. ("Galvanizers")[3]; and Jasper Materials, Inc. ("Jasper"). Plaintiffs seek to represent a proposed class defined as "[a]ll persons who, or entities which, purchased LME U.S. Zinc and paid the Platts Zinc MW SHG Premium or similar price premium in the United States from a primary zinc producer or a Defendant from September 14, 2010 to the present." (*See* SAC ¶ 216 (ECF No. 163); proposed 3d Am. Compl. ("TAC") ¶ 275 (ECF No. 205-1)).

Defendants are affiliated corporate entities, Glencore Ltd. ("Glencore") and Pacorini USA. (*See* SAC ¶¶ 62, 66.) Glencore has been the owner of Pacorini USA since at least September 2010 (*Id.* ¶ 67.) Glencore trades commodities, including zinc, but it does not own or operate metals warehouses.  Pacorini USA, on the other hand, operates LME-approved warehouses that store zinc, but it does not own or trade zinc. (*Id.* ¶ 68.)

### III.   Identities of Counsel and Organizational/Leadership Structure

Plaintiffs are represented jointly by Kessler Topaz Meltzer & Check, LLP; Lovell Stewart Halebian Jacobson LLP; Nussbaum Law Group, P.C.; and Cera LLP, as Interim Co-Lead Counsel for Direct Purchaser Plaintiffs and the Proposed Direct Purchaser Plaintiff Class. The Court appointed these firms as Interim Co-Lead Counsel in orders dated July 24, 2014 (ECF No. 70), May 21, 2015 (ECF No. 102), and June 1, 2015 (ECF No. 105). There is no category of plaintiffs in this litigation other than the Direct Purchaser Plaintiffs.

Glencore is represented by Curtis, Mallet-Prevost, Colt & Mosle LLP. Pacorini USA is represented by Skadden, Arps, Slate, Meagher & Flom LLP.

### IV.   History of the Litigation

Duncan Galvanizing Corp. ("Duncan") filed the first class action complaint alleging Sherman Act violations relating to zinc on May 23, 2014, in the United States District Court for the Southern District of New York, naming the London Metal Exchange Ltd.; LME Holdings Ltd.; Hong Kong Exchanges & Clearing Ltd.; Glencore Xstrata, PLC (now known as Glencore plc); Glencore Ltd; Pacorini USA; Goldman Sachs Group, Inc. ("Goldman"); Metro International Trade Services LLC ("Metro"); and JPMorgan Chase & Co. ("JPMorgan") as defendants.  (ECF No. 2) The complaint alleged that defendants had conspired to restrain the market for LME U.S. Zinc in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and had conspired to monopolize in violation of Section 2 of the Act, and further asserted Section 2 monopolization and attempted monopolization claims against Glencore and Pacorini USA. Similar complaints were subsequently filed in this District on June 13, 2014, by Oklahoma Steel, Iowa Steel, and Southwestern, and on July 8, 2014, by Galvanizers.

---

[3]   In late 2016, Plaintiff Galvanizers sought to withdraw as a named plaintiff for business reasons.  This development was discussed with Defendants and a proposed stipulation to withdraw Galvanizers was provided to Defendants on December 22, 2016, shortly before the stay was entered.  The proposed Third Amended Complaint removes Galvanizers as a named plaintiff.

Plaintiffs filed a Consolidated Amended Complaint (the "CAC") on June 17, 2015, naming as defendants Glencore Ltd, Pacorini USA, Goldman Sachs International and its subsidiaries GS Power Holdings LLC, MCEPF Metro I, Inc., Mitsi Holdings, LLC and Metro International Trade Services, LLC, and JP Morgan Securities plc and its subsidiaries JP Morgan Ventures Energy Corporation and Henry Bath LLC, alleging conspiracies in violation of Sections 1 and 2, along with Section 2 claims for monopolization and attempted monopolization against Glencore and Pacorini USA. (ECF No. 106.)[4]  Glencore, Pacorini USA, and the Goldman and JPMorgan defendants each filed separate motions to dismiss on August 3, 2015. On January 7, 2016, the Court dismissed the conspiracy claims with prejudice, removing the Goldman and JPMorgan defendants from the litigation, but permitted Plaintiffs to re-plead monopolization and attempted monopolization claims against Glencore and Pacorini USA. *See In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337 (S.D.N.Y. 2016) ("*Zinc I*") (ECF No 155).

On February 11, 2016, Plaintiffs filed the SAC, naming only Glencore and Pacorini USA as defendants and asserting monopolization and attempted monopolization claims, as well as an unlawful merger claim pursuant to Section 7 of the Clayton Act, 15 U.S.C. § 18, relating to Glencore's acquisition of Pacorini USA in 2010. (ECF No. 163.) Defendants moved to dismiss on February 29, 2016, and on June 6, 2016, the Court dismissed the Clayton Act claim, but ruled that the Sherman Act Section 2 claims were adequately pleaded and discovery was to proceed. *See Zinc II*, 2016 WL 3167192 (ECF No. 187).

On November 22, 2016, Plaintiffs moved for leave to file a Third Amended Complaint (the "TAC"), which would remove Galvanizers as a named plaintiff and would name six additional defendants: Glencore plc; Glencore AG; Glencore International AG; Access World AG; Access World (Vlissingen) B.V.; and Mario Casciano.  (ECF Nos. 203-205.)  Defendants filed their opposition brief on December 22, 2016, and Plaintiffs replied on January 13, 2017. (ECF Nos. 214, 221.)  The Court did not hold a hearing or rule on Plaintiffs' motion prior to the Order staying the case in its entirety.  (ECF No. 231.)

While Plaintiffs' motion was pending, on December 22, 2016, the Defendants filed a Rule 12(c) motion for judgment on the pleadings in light of the then-recent orders dismissing the *Aluminum* actions on antitrust injury grounds.  (ECF Nos. 211, 212.) The Defendants argued that the *Zinc* plaintiffs also lacked antitrust injury.  On January 3, 2017, the Court entered an order staying discovery pending resolution of the 12(c) motion. (*See* ECF No. 220.) Plaintiffs filed their opposition brief on January 27, 2017, and Defendants replied on February 10, 2017. (ECF Nos. 226, 229.) The *Aluminum* plaintiffs meanwhile appealed to the United States Court of Appeals for the Second Circuit, and on March 15, 2017, the Court stayed *Zinc* in its entirety, reasoning that "resolution of the pending appeals in [*Aluminum*] will be important to the resolution of" Defendants' 12(c) motion in *Zinc*. (*See* ECF No. 231.) The Court also administratively terminated Defendants' 12(c) motion "with leave to renew, as appropriate, following resolution of the *Aluminum* appeals."  (*Id.*)

On August 27, 2019, the Second Circuit vacated the *Aluminum* dismissals, holding that the *Aluminum* plaintiffs had adequately pleaded their antitrust injury. *See Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86 (2d Cir. 2019). On September 13, 2019, Chief Judge Colleen

---

[4]  A "Corrected" Amended Complaint was filed September 28, 2015. (ECF No. 138).

McMahon of the Southern District notified the parties that *Aluminum* and *Zinc* had both been reassigned to this Court. (*See* ECF No. 244.)

## V.   Discovery That Has Been Completed

There has been very limited discovery so far in this litigation.  The *Zinc* parties served document requests and reached agreements as to document custodians, search terms, and date ranges, and had just begun making document productions in the later months of 2016, when discovery was stayed.  Plaintiffs also served several document subpoenas and were engaged in meet and confer efforts with third parties.  Therefore, the document production process and third-party discovery had begun but was far from complete when discovery was stayed. No fact or expert depositions have been taken.  No discovery motions are pending.

## VI.   Remaining Discovery

The parties anticipate having to review and produce substantial additional documents and to take and/or defend a significant number of fact depositions, in addition to outstanding and anticipated discovery from third parties.  Discovery could expand if Plaintiffs' motion to file its Third Amended Complaint is permitted to add additional Glencore and Pacorini USA-related entities and Mario Casciano.  Additionally, the parties anticipate the need for each side to submit class and merits expert reports and to take and/or defend expert depositions.

## VII.   Upcoming Deadlines and Pending Motions

There are presently no deadlines, due dates, or cut-off dates.

### A.   Plaintiffs' Position as to the Proposed Third Amended Complaint

In Plaintiffs' view, the Court's June 21, 2016 Scheduling Order (ECF No. 192) did not include a deadline to amend or add new parties to this matter.  Plaintiffs filed a motion for leave to file the proposed TAC (*see* ECF No. 203), and that motion is currently pending before this Court.  As noted above, the proposed TAC would remove Galvanizers as a named plaintiff and would name six additional defendants: Glencore plc; Glencore AG; Glencore International AG; Access World AG; Access World (Vlissingen) B.V.; and Mario Casciano.  (ECF Nos. 203-205.) These new defendants were added based on Plaintiffs' review of documents that Defendants produced in the fall of 2016, which uncovered information regarding the direct roles played by the proposed defendants in the alleged scheme to monopolize the LME U.S. Zinc Market.  (ECF No. 221 at p.1).

However, given the nearly two year delay resulting from the stay, Plaintiffs believe supplemental briefing may be necessary, and that further amendment may be necessary in light of legal and factual developments. Plaintiffs propose meeting and conferring with Defendants in order to inform the Court of the parties' respective positions at prior to the November 4, 2019 conference.  Based on subsequent events and research, Plaintiffs are also considering filing a new proposed Third Amended Complaint to add additional Defendants and factual allegations, and the parties are meeting and conferring and will inform the Court prior to the November 4, 2019 conference regarding their positions on this issue as well.

### B.      Defendants' Position as to Proposed Third Amended Complaint

Defendants disagree with Plaintiffs' assertion that additional briefing is required before this Court can rule on Plaintiffs' motion for leave to file the TAC.  Plaintiffs' motion is *sub judice* and ripe for this Court's decision.  Nevertheless, Defendants will agree to Plaintiffs' request to meet and confer in advance of the November 4 conference, which was made only two days before the deadline for filing this letter with the Court.

More fundamentally, Plaintiffs' endeavor to further amend their pleadings disregards the history of this litigation.  Plaintiffs have already had at least three opportunities to plead their claims and were explicitly instructed by Judge Forrest to take their "best shot" in filing the SAC.  Tr. at 26:7 (ECF No. 75); *see also Zinc I*, 155 F. Supp. 3d at 385 ("Although plaintiffs have had ample opportunity to plead their strongest possible claims by drafting the CAC with the benefit of this Court's decisions in" the related aluminum warehousing antitrust cases ("*Aluminum*"), the court nevertheless "allow[ed] plaintiffs *one more attempt* to re-plead their" Section 2 claims against Glencore and/or Pacorini USA. (emphasis added)).

## VIII.   Outstanding Issues and Proposed Timetables

Plaintiffs' pending motion for leave to file the TAC would, if granted, amend their factual allegations and, among other things, add five foreign defendants, all of whom are related entities of existing defendants, and a former employee.  Accordingly, the parties respectfully request an opportunity to meet, confer, and propose a scheduling order to the Court within 21 days of resolution of that pending motion.

## IX.   Estimated Length of Trial

The estimated length of the trial will depend on whether additional parties are added.  Accordingly, the parties respectfully request an opportunity to meet, confer, and will include an estimated trial length in a proposed scheduling order to the Court within 21 days of resolution of that pending motion.

## X.   Status of Settlement Discussions

As of the date of this letter, no settlement discussions have occurred, and no settlement offers or demands have been made.

## XI.   Relation to *Aluminum*

The *Aluminum* and *Zinc* actions share some similarities in that both actions involve storage of metals in LME warehouses and include overlapping parties and counsel.  The actions differ in that they involve different metals and different legal theories and are in different procedural postures.  The *Zinc* action was designated "related" to *Aluminum* at the time of its filing, and some of the *Aluminum* decisions by this Court and the Second Circuit—for example, with respect to pleading of antitrust injury—have informed the resolution of analogous issues in *Zinc*.  However, there were differences between *Aluminum* and *Zinc* at the time the cases were filed and others have developed over the course of the litigations.

8

Judge Forrest dismissed the *Zinc* plaintiffs' antitrust conspiracy claim and also dismissed the Goldman Sachs, Metro, JPMorgan, and Henry Bath Defendants from *Zinc*.  She sustained, however, Plaintiffs' monopolization and attempted-monopolization claims under Section 2 of the Sherman Act against the Glencore and Pacorini USA Defendants.  *See Zinc I.*  Section 1 claims have been sustained in *Aluminum.*

Thus, the allegations in *Aluminum* concern a different commodity (primary aluminum, not LME U.S. Zinc), center on alleged conduct in different locations (Detroit, not New Orleans), and advance different theories of antitrust liability (a Section 1 claim, rather than a Section 2 monopolization claim against related corporate entities).  Moreover, the cases are procedurally distinct:  fact discovery has closed in *Aluminum*, and the putative class plaintiffs' motion for class certification has been briefed.  By contrast, fact discovery in *Zinc* was stayed in its early stages.

Given these differences, the parties respectfully suggest that a separate schedule be established for *Zinc* once the Court has ruled on Plaintiffs' motion for leave to amend their complaint.

## XII.  <u>Other Information</u>

The parties do not have any additional information that they believe would be useful to the Court at this time.  The parties will be available to answer any further questions that the Court may have at the November 4, 2019 conference.

Respectfully submitted,

s/ Joseph H. Meltzer
KESSLER TOPAZ
MELTZER & CHECK, LLP
Joseph H. Meltzer
Melissa Troutner
Geoff Jarvis
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email: jmeltzer@ktmc.com
Email: mtroutner@ktmc.com
Email: gjarvis@ktmc.com


s/ Christopher Lovell
LOVELL STEWART HALEBIAN
JACOBSON LLP
Christopher Lovell
Benjamin M. Jaccarino
500 5th Avenue, Suite 2440
New York, NY 10110
Tel: (212) 608-1900
Fax: (212) 719-4775
Email: clovell@lshllp.com
Email: bjaccarino@lshllp.com

s/ Linda P. Nussbaum
NUSSBAUM LAW GROUP, P.C.
Linda P. Nussbaum
Bart D. Cohen
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Tel.: (917) 438-9102
Fax: (212) 753-0396
Email: lnussbaum@nussbaumpc.com
Email: bcohen@nussbaumpc.com


s/ Solomon B. Cera
CERA LLP
Solomon B. Cera
Pamela A. Markert
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com


Interim Co-Lead Counsel for Direct
Purchaser Plaintiffs


s/ Eliot Lauer
CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP
Eliot Lauer
101 Park Avenue
New York, New York  10178
Telephone:  (212) 696-6000
(212) 697-1559 (fax)

Attorney for Defendant Glencore Ltd.

s/ Boris Bershteyn
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Boris Bershteyn
Four Times Square
New York, New York  10036-6522
Telephone:  (212) 735-3834
(917) 777-3834 (fax)

Attorney for Defendant Access World
(USA) LLC (f/k/a Pacorini Metals USA,
LLC)

cc:   All counsel of record